Reese, J.
delivered the opinion of the court.
White obtained several judgments against William R. Brown and Ira E. Brown, before a Justice of the Peace, upon claims evidenced by bills single. One Robert S. Harris, at the instance and request of W. R. Brown, but not at the instance or request of Ira E. Brown, became bound in all the judgments,, asstayor, or surety for the stay of execution. Ira E. Brown was in fact surety only in all the bills single upon which the judgments were rendered; but this did not appear upon the face of the instruments sued on, and the stay surety did not know whether he was principal or surety merely. The act of 1820, ch. 24, sec. 1, Hayw. & Cobbs, 208, provides, that where “one shall stay a judgment rendered against principal and'sureties, without the request or consent of the sureties,” such stayor shall be liable before such sureties. Upon this section, the Supreme Court held, in a case reported in Peck’s Rep. that “without consent” implied dissent, in order to postpone his liability to that of the second surety. Whereupon, the legislature, in 1825, ch. 82, sec. 1, to clear all doubts as to their meaning in 1820, provided that the liability of the first sureties shall in all cases be postponed to that of the surety stay, unless such first surety should have specially joined with such debtor in procuring such stay or replevy. The object of these statutes is very apparent: it was to settle a question of security upon just principles between persons standing in the same general relation to the debtor, and to prevent the practical infliction of great wrong upon sureties, by the operation of the law itself granting stay of execution.
A debtor in failing circumstances and his solvent sureties are sued. The replevin surety risks nothing, if his liability is postponed to that of the judgment sureties, and after the stay is out, they are compelled unfairly to pay • the judgment, because in the mean time the principal has failed altogether. The statute intended to prevent this; but by what remedy? The principle being declared, and the parties generally knowing their own relations to each other, as also the judicial and ministerial officers, practical difficulty would not often arise. But if it should, a supersedeas, it is admitted by the counsel of White, *298 or Harris, in a court of law, will be the proper remedy, where the relation of surety appears upon the face of the instrument. But where it does not so appear, they allege that this is no remedy at law; if not, there would be none in equity, in a large majority of cases, as jurisdiction stood in 1820; the minimum limit of chancery jurisdiction being fifty dollars, and that being the maximum limit as to most cases before a Justice..
It is most obvious, that such was not the legislative will. The court of law, by the intervention of a jury, could adequately supply the remedy. It was not an enquiry to impeach the consideration' of the contract,' which would be necessary, but ■to ascertain the relation of principal and surety. That power had been given to the legislature, to be exercised in the most summary manner, in 1809, and also in the year before. It is a mere matter of fact; that ascertained, the statutes determine the right; and that fact a court and jury can ascertain as well as a court of chancery. The stayor, besides, cannot be injured; he knows who requests him to stay; such are liable to him: if any request him not,. they are liable to him, provided they are principal debtors; but if sureties, they are not liable; that risk he takes upon himself, and that risk it is proper he should take upon himself.
The Circuit Court, therefore, was in error, in rejecting the evidence to prove to relation of surety on the part of Ira E. Brown.
Let the judgment be reversed.